IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

AMANDA BETH B.,[1]                          3:18-cv-00051-BR

       Plaintiff,                       OPINION AND ORDER

v.

COMMISSIONER, SOCIAL
SECURITY ADMINISTRATION,

       Defendant.


**BETSEY R. SHEPHERD**
425 Riverwalk Manor Drive
Dallas, GA  30132
(505) 480-5630

       Attorney for Plaintiff

**BILLY J. WILLIAMS**
United States Attorney
**RENATA GOWIE**
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR  97204-2902
(503) 727-1003

---

[1]  In the interest of privacy this Opinion uses only the first name and the initial of the last name of the non-governmental party.  Where applicable, this Opinion uses the same designation for the nongovernmental party's immediate family member.


1 - OPINION AND ORDER

**MICHAEL W. PILE**
Acting Regional Chief Counsel
**MICHAEL HOWARD**
Special Assistant United States Attorney
Social Security Administration
701 5th Avenue, Suite 2900, M/S 221A
Seattle, WA 98104
(206) 615-3749

        Attorneys for Defendant

**BROWN, Senior Judge.**

Plaintiff Amanda Beth B. seeks judicial review of the final decision of the Commissioner of the Social Security Administration (SSA) in which the Commissioner denied Plaintiff's application for Disability Insurance Benefits (DIB) under Title II of the Social Security Act. This Court has jurisdiction to review the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).

For the reasons that follow, the Court **AFFIRMS** the decision of the Commissioner and **DISMISSES** this matter.

## ADMINISTRATIVE HISTORY

Plaintiff protectively filed her initial application for DIB benefits on February 21, 2014. Tr. 10.[2] Plaintiff alleged a disability onset date of June 7, 2013. Plaintiff's application

---

[2] Citations to the official transcript of record filed by the Commissioner on July 10, 2018, are referred to as "Tr."

was denied initially and on reconsideration. An Administrative Law Judge (ALJ) held a hearing on May 25, 2016. Tr. 10, 39-87. Plaintiff and a vocational expert (VE) testified. Plaintiff was represented by an attorney at the hearing.

On November 14, 2016, the ALJ issued an opinion in which he found Plaintiff was not disabled and, therefore, is not entitled to benefits. Tr. 10-25.

On December 27, 2016, Plaintiff requested review of the hearing decision by the Appeals Council. Tr. 176.

On November 6, 2017, the Appeals Council denied Plaintiff's request to review the ALJ's decision, and the ALJ's decision became the final decision of the Commissioner. Tr. 1-3. *See Sims v. Apfel*, 530 U.S. 103, 106-07 (2000).

On January 9, 2018, Plaintiff filed a Complaint in this Court seeking review of the Commissioner's decision.


## BACKGROUND

Plaintiff was born on November 14, 1983, and was 29 years old on her alleged disability onset date. Tr. 24. Plaintiff has obtained a G.E.D. and completed some community-college courses. Tr. 24, 46, 67. The ALJ found Plaintiff is able to perform her past relevant work as a customer-service representative and a telemarketer. Tr. 23.

Plaintiff alleges disability due to multiple sclerosis, anxiety, and severe depression.  Tr. 99.

Except as noted, Plaintiff does not challenge the ALJ's summary of the medical evidence.  After carefully reviewing the medical records, this Court adopts the ALJ's summary of the medical evidence.  *See* Tr. 16-23.

## STANDARDS

The initial burden of proof rests on the claimant to establish disability.  *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012).  To meet this burden a claimant must demonstrate her inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The ALJ must develop the record when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence.  *McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2011)(quoting *Mayes v. Massanari,* 276 F.3d 453, 459-60 (9th Cir. 2001)).

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole.  42

U.S.C. § 405(g). *See also Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1161 (9th Cir. 2012). Substantial evidence is "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Molina*, 674 F.3d. at 1110-11 (quoting *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009)). It is more than a mere scintilla of evidence but less than a preponderance. *Id.* (citing *Valentine*, 574 F.3d at 690).

The ALJ is responsible for evaluating a claimant's testimony, resolving conflicts in the medical evidence, and resolving ambiguities. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). The court must weigh all of the evidence whether it supports or detracts from the Commissioner's decision. *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). Even when the evidence is susceptible to more than one rational interpretation, the court must uphold the Commissioner's findings if they are supported by inferences reasonably drawn from the record. *Ludwig v. Astrue*, 681 F.3d 1047, 1051 (9th Cir. 2012). The court may not substitute its judgment for that of the Commissioner. *Widmark v. Barnhart*, 454 F.3d 1063, 1070 (9th Cir. 2006).

## DISABILITY ANALYSIS

### I.    The Regulatory Sequential Evaluation

At Step One the claimant is not disabled if the Commis-sioner determines the claimant is engaged in substantial gainful activity (SGA).  20 C.F.R. § 404.1520(a)(4)(I).  *See also Keyser v. Comm'r of Soc. Sec.*, 648 F.3d 721, 724 (9th Cir. 2011).

At Step Two the claimant is not disabled if the Commissioner determines the claimant does not have any medically severe impairment or combination of impairments.  20 C.F.R. §§ 404.1509, 404.1520(a)(4)(ii).  *See also Keyser*, 648 F.3d at 724.

At Step Three the claimant is disabled if the Commissioner determines the claimant's impairments meet or equal one of the listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity.  20 C.F.R. § 404.1520(a)(4)(iii).  *See also Keyser*, 648 F.3d at 724.  The criteria for the listed impairments, known as Listings, are enumerated in 20 C.F.R. part 404, subpart P, appendix 1 (Listed Impairments).

If the Commissioner proceeds beyond Step Three, she must assess the claimant's residual functional capacity (RFC).  The

6 - OPINION AND ORDER

claimant's RFC is an assessment of the sustained, work-related physical and mental activities the claimant can still do on a regular and continuing basis despite her limitations.  20 C.F.R. § 404.1520(e).  *See also* Social Security Ruling (SSR) 96-8p.  "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent schedule." SSR 96-8p, at *1.  In other words, the Social Security Act does not require complete incapacity to be disabled.  *Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1234-35 (9th Cir. 2011)(citing *Fair v. Bowen,* 885 F.2d 597, 603 (9th Cir. 1989)).

At Step Four the claimant is not disabled if the Commissioner determines the claimant retains the RFC to perform work she has done in the past.  20 C.F.R. § 404.1520(a)(4)(iv). *See also Keyser*, 648 F.3d at 724.

If the Commissioner reaches Step Five, she must determine whether the claimant is able to do any other work that exists in the national economy.  20 C.F.R. § 404.1520(a)(4)(v).  *See also Keyser*, 648 F.3d at 724-25.  Here the burden shifts to the Commissioner to show a significant number of jobs exist in the national economy that the claimant can perform.  *Lockwood v. Comm'r Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010). The Commissioner may satisfy this burden through the testimony of a VE or by reference to the Medical-Vocational Guidelines set

forth in the regulations at 20 C.F.R. part 404, subpart P, appendix 2. If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. § 404.1520(g)(1).

## ALJ'S FINDINGS

At Step One the ALJ found Plaintiff has not engaged in substantial gainful activity since June 7, 2013, her alleged date of disability onset. Tr. 14.

At Step Two the ALJ found Plaintiff has the severe impairments of multiple sclerosis (MS) and obesity. Tr. 14.

At Step Three the ALJ concluded Plaintiff's medically determinable impairments do not meet or medically equal one of the listed impairments in 20 C.F.R. part 404, subpart P, appendix 1. Tr. 15. The ALJ found Plaintiff has the RFC to perform light work. The ALJ also found Plaintiff is able to lift and to carry 20 pounds occasionally and ten pounds frequently, is able to stand, walk, and sit about six hours in an eight-hour workday, and can "occasionally balance." The ALJ found Plaintiff should avoid even moderate exposure to extreme heat. Tr. 16.

At Step Four the ALJ concluded Plaintiff is able to perform her past relevant work as a customer service representative and a telemarketer. Tr. 23.

Alternatively, at Step Five the ALJ found Plaintiff can perform other work in the national economy such as office helper, storage facility rental clerk, and price marker. Tr. 24-25. Accordingly, the ALJ found Plaintiff is not disabled. Tr. 25.

## DISCUSSION

Plaintiff contends the ALJ erred when he (1) failed to provide clear and convincing reasons for discounting Plaintiff's testimony, (2) failed to provide clear and convincing evidence for rejecting the medical opinions of Plaintiff's treating providers, (3) improperly rejected lay-witness testimony, and (4) failed to include all of Plaintiff's limitations when he assessed Plaintiff's RFC and posed hypothetical questions to the VE.

**I.  The ALJ did not err when he found Plaintiff's testimony was not fully credible.**

Plaintiff contends the ALJ erred when he failed to provide clear and convincing reasons for discounting Plaintiff's symptom testimony.

**A.  Standards**

The ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or

symptoms is credible.  "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014)(quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007)).  The claimant is not required to show that his "impairment could reasonably be expected to cause the severity of the symptom [he] has alleged; [he] need only show that it could reasonably have caused some degree of the symptom." *Garrison*, 759 F.3d at 1014 (quoting *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996)).  A claimant is not required to produce "objective medical evidence of the pain or fatigue itself, or the severity thereof." *Id.*

If the claimant satisfies the first step of this analysis and there is not any affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of [his] symptoms only by offering specific, clear and convincing reasons for doing so." *Garrison*, 759 F.3d at 1014-15. *See also Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006)("[U]nless an ALJ makes a finding of malingering based on affirmative evidence thereof, he or she may only find an applicant not credible by making specific findings as to credibility and stating clear and convincing reasons for each.").

General assertions that the claimant's testimony is not credible are insufficient. *Parra v. Astrue,* 481 F.3d 742, 750 (9th Cir. 2007). The ALJ must identify "what testimony is not credible and what evidence undermines the claimant's complaints." *Id.* (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)).

## B. Analysis

The ALJ discounted Plaintiff's testimony regarding her symptoms on the grounds that Plaintiff's testimony was inconsistent with the medical and other evidence in the record. Tr. 17.

Plaintiff testified she experiences severe fatigue, vertigo, nausea, vomiting, headaches, and incontinence during MS relapses. Tr. 16. Plaintiff testified these symptoms cause her to have attendance problems with work, make it difficult to take a bus to work, and cause her to lose her balance while standing. *Id.* Plaintiff testified there are times when she "feels fine and suddenly wakes up and does not feel well," she has difficulty sleeping, and she "occasionally takes naps during the day, maybe once every two weeks." Tr. 16-17.

The ALJ noted the record reflects Plaintiff generally has normal gait, strength, muscle tone, and balance, which are not entirely consistent with Plaintiff's allegations. Tr. 20. The ALJ also found although the record reflects Plaintiff has

some limitations, the record also indicates "significant improvement with medication and reflect[s] a generally stable course." Tr. 20. For example, the ALJ noted Plaintiff reported increased symptoms in June 2013 that were treated with medications, and Plaintiff reported resolution of her right arm and hand pain and improved function in her right upper extremity after taking the medications. Tr. 18, 336-43. Then in November 2013 Plaintiff reported "doing very well," that she felt "empowered," and that she was finishing school. Tr. 18, 346. Similarly, in March 2016 Plaintiff reported "urge incontinence" related to her MS, but "overall relatively stable course." Tr. 19, 564. Plaintiff noted her bladder symptoms had worsened during the past year and that she had two episodes per week of incontinence with mild stress incontinence, but she stated this was "not overly bothersome." *Id.*

The ALJ also noted Plaintiff's activities reflect a greater capacity for functioning than alleged, and Plaintiff's symptoms did not consistently cause debilitating limitations. Tr. 21. For example, Plaintiff is able to prepare meals, to perform household chores, to shop, to use public transportation, and to travel to Arizona by car and by airplane. The ALJ took into account that Plaintiff attended community college off and on, was on the honor's list, and told medical providers that she

"did well in school."  In addition, although she did not engage in substantial gainful employment, Plaintiff worked since her alleged onset date.  Tr. 21, 67, 197-98, 275-76, 466.

On this record the Court concludes the ALJ did not err when he discounted Plaintiff's symptom testimony and found it was not fully credible because the ALJ provided clear and convincing reasons supported by substantial evidence in the record for doing so.

## II.  The ALJ properly evaluated the medical opinions of Plaintiff's treating providers.

Plaintiff contends the ALJ erred when he discounted the medical opinions of Stanley Cohan, M.D., Plaintiff's treating neurologist, and Leah Gaedeke, Plaintiff's treating nurse practitioner (NP).

### A.  Standards

#### 1.  Medical Opinions

"In disability benefits cases . . . physicians may render medical, clinical opinions, or they may render opinions on the ultimate issue of disability — the claimant's ability to perform work." *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014).  "In conjunction with the relevant regulations, [courts] have . . . developed standards that guide [the] analysis of an ALJ's weighing of medical evidence." *Ryan v. Comm'r of Soc.*

*Sec.,* 528 F.3d 1194, 1198 (9th Cir. 2008).  Specifically, the

court must "distinguish among the opinions of three types of

physicians:  (1) those who treat the claimant (treating

physicians); (2) those who examine but do not treat the claimant

(examining physicians); and (3) those who neither examine nor

treat the claimant (nonexamining physicians)." *Garrison*, 759

F.3d at 1012.  "As a general rule, more weight should be given to

the opinion of a treating source than to the opinion of doctors

who do not treat the claimant." *Id.*  Although the opinion of a

treating physician is entitled to greater weight than that of an

examining physician, the opinion of an examining physician is

entitled to greater weight than that of a nonexamining

physician. *Ryan,* 528 F.3d at 1198.  "The weight afforded a

nonexamining physician's testimony depends 'on the degree to

which [he] provide[s] supporting explanations for [his]

opinions.'" *Id.* (quoting 20 C.F.R. § 404.1527(d)(3)).

     "If a treating or examining doctor's opinion is

contradicted by another doctor's opinion, an ALJ may only reject

it by providing specific and legitimate reasons that are

supported by substantial evidence." *Id.*  Even when contradicted,

a treating or examining physician's opinion is still owed

deference and will often be "entitled to the greatest weight

. . . even if it does not meet the test for controlling weight."

*Orn v. Astrue,* 495 F.3d 625, 633 (9th Cir. 2007). An ALJ can

satisfy the "substantial evidence" requirement by "setting out a

detailed and thorough summary of the facts and conflicting

clinical evidence, stating his interpretation thereof, and

making findings." *Reddick,* 157 F.3d at 725. "The ALJ must do

more than state conclusions. He must set forth his own

interpretations and explain why they, rather than the doctors',

are correct." *Id.* (citation omitted).

### 2. Medical Sources

Medical sources are divided into two categories:

"acceptable medical sources" and "other sources." 20 C.F.R.

§§ 404.1513, 416.913. Acceptable medical sources include

licensed physicians and psychologists. 20 C.F.R.

§§ 404.1513(a), 416.913(a). Medical sources classified as

"other sources" include, but are not limited to, nurse

practitioners, therapists, licensed clinical social workers, and

chiropractors. 20 C.F.R. §§ 404.1513(d), 416.913(d).

With respect to "other sources," the Social Security

Administration notes:

> With the growth of managed health care in recent
> years and the emphasis on containing medical
> costs, medical sources who are not acceptable
> medical sources, such as nurse practitioners,
> physician assistants, and licensed clinical
> social workers, have increasingly assumed a
> greater percentage of the treatment and

> evaluation functions previously handled primarily
> by physicians and psychologists. Opinions from
> these medical sources, who are not technically
> deemed acceptable medical sources under our
> rules, are important and should be evaluated on
> key issues such as impairment severity and
> functional effects, along with the other relevant
> evidence in the file.

SSR 06-03p, at *3. Factors the ALJ should consider when
determining the weight to give an opinion from those "important"
sources include the length of time the source has known the
claimant, the number of times and frequency that the source has
seen the claimant, the consistency of the source's opinion with
other evidence in the record, the relevance of the source's
opinion, the quality of the source's explanation of his opinion,
and the source's training and expertise. SSR 06-03p, at *4. On
the basis of the particular facts and the above factors, the ALJ
may assign a not-acceptable medical source either greater or
lesser weight than that of an acceptable medical source. SSR
06-03p, at *5-6.

The ALJ, however, must explain the weight assigned to
such sources to the extent that a claimant or subsequent
reviewer may follow the ALJ's reasoning. SSR 06-03p, at *6.
"The ALJ may discount testimony from . . . 'other sources' if
the ALJ 'gives reasons germane to each witness for doing so.'"
*Molina*, 674 F.3d at 1111 (quoting *Turner v. Comm'r Soc. Sec.*

*Admin.*, 613 F.3d 1217, 1224 (9th Cir. 2010)).

## B. Analysis

Plaintiff contends the ALJ failed to provide specific and legitimate reasons for rejecting the medical opinions of Dr. Cohan and NP Gaedeke.

On October 6, 2015, Dr. Cohan and/or NP Gaedeke completed a questionnaire regarding Plaintiff's limitations.[3] Tr. 539-41.  They opined Plaintiff would not be able to "physically withstand any aspect of gainful employment" as a result of her MS flares that had occurred intermittently since 2006.  Tr. 541.

The ALJ gave the opinions of Dr. Cohan and NP Gaedeke "little weight" on the grounds that they were "conclusory and fail[ed] to contain information regarding [Plaintiff's] specific abilities on a function-by-function basis," were not supported by the medical record, relied heavily on Plaintiff's subjectively reported symptoms, and were not supported by Plaintiff's activities.  Tr. 22.  For example, Dr. Cohan noted Plaintiff's MS impaired her ability to grasp repetitively.  Tr. 540.  The ALJ, however, found there was not

---

[3] The Statement bears Dr. Cohan's printed name, but it appears to have been completed and signed by NP Gaedeke. Tr. 22.

any evidence in the record of a significant decrease in grip strength or manipulative difficulties, and, in fact, Plaintiff had full grip strength in February 2015. Tr. 22, 478. The ALJ also noted treatment records from Dr. Cohan's office repeatedly reflect Plaintiff reported improvement in her conditions with treatment, that she was doing very well physically, and that she was alert without signs of fatigue during examinations. Tr. 22.

Moreover, the ALJ's assessment was also supported by the opinion of consultative examiner, Tatsuro Ogisu, M.D., who examined Plaintiff on July 12, 2016. Tr. 517-81. Dr. Ogisu found Plaintiff had full grip strength bilaterally, was alert, and showed no signs of fatigue during the examination. Tr. 22, 573-74.

On this record the Court concludes the ALJ did not err when he discounted the opinions of Dr. Cohan and NP Gaedeke because the ALJ provided legally sufficient reasons supported by substantial evidence in the record for doing so.

**III. The ALJ gave germane reasons for discounting lay-witness testimony.**

Plaintiff contends the ALJ erred when he failed to provide reasons that are germane to the lay-witness statement of Kyle Leeson, Plaintiff's husband, regarding Plaintiff's limitations.

**A. Standards**

Lay-witness testimony regarding a claimant's symptoms is competent evidence that the ALJ must consider unless he "expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." *Lewis v. Apfel,* 236 F.3d 503, 511 (9th Cir. 2001). The ALJ's reasons for rejecting lay-witness testimony must also be "specific." *Stout v. Comm'r, Soc. Sec. Admin.,* 454 F.3d 1050, 1054 (9th Cir. 2006). Nevertheless, an ALJ is not required to address each lay-witness statement or testimony on an "individualized, witness-by-witness-basis.

Germane reasons for discrediting a witness's testimony include inconsistency with the medical evidence and the fact that the testimony "generally repeat[s]" the properly discredited testimony of a claimant. *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005). *See also Williams v. Astrue*, 493 F. App'x 866 (9th Cir. 2012).

**B.  Analysis**

In a Third-Party Function Report dated December 30, 2014, Leeson stated Plaintiff experiences fatigue, nausea, anxiety, and balance issues that result in attendance problems and that the stress of performance reviews triggers Plaintiff's symptoms and MS relapses. Tr. 23, 233-40. He also stated Plaintiff struggles to perform basic self-care, occasionally

requires help with personal hygiene, and becomes anxious in
social situations.  Tr. 237.  Leeson also noted Plaintiff has
difficulty lifting more than 40 pounds, loses her balance while
squatting or bending, can only walk a quarter of a mile on a
good day, and has trouble standing for more than five minutes
due to vertigo during an MS relapse.  Tr. 238.

Plaintiff contends the record supports Plaintiff's
testimony and that the ALJ failed to offer a germane reason for
rejecting it.  Thus, Plaintiff asserts the ALJ could have
reached a different conclusion regarding Plaintiff's disability
if he had properly credited Leeson's testimony.

Although the ALJ considered Leeson's statement, the
ALJ concluded it was "not entirely consistent with the medical
evidence" and "failed to contain objective findings" to support
the extent of the limitations Leeson reported.  Tr. 23.  In
addition, the ALJ noted Leeson's statements appeared to be based
primarily on Plaintiff's subjective reports.  Tr. 23.

The Ninth Circuit has held "inconsistency with medical
evidence" constitutes a "germane reason" for justifying an ALJ's
rejection of lay testimony.  *Bayliss*, 427 F.3d at 1218.  In
addition, the ALJ may discount lay-witness testimony that is
similar to a claimant's subjective reports when the ALJ
determines the claimant is not a credible witness.  *Valentine v.*

*Comm. Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009). As noted, this Court has concluded the ALJ did not err when he discounted Plaintiff's symptom testimony.

On this record the Court concludes the ALJ provided germane reasons for discounting the lay-witness statements of Leeson.

## IV. The ALJ included all of Plaintiff's limitations in his assessment of Plaintiff's RFC and in his hypothetical questions posed to the VE.

Plaintiff contends the ALJ failed to include all of Plaintiff's limitations in his evaluation of Plaintiff's RFC and also failed to include those limitations in the hypothetical questions posed to the VE.

As noted, the Court has determined the ALJ provided legally sufficient reasons for discounting Plaintiff's subjective complaints about her symptoms, properly evaluated the medical evidence, and provided germane reasons for discounting the lay-witness testimony. Accordingly, the Court concludes the ALJ did not err in his assessment of Plaintiff's RFC or in the limitations included in his hypothetical questions posed to the VE.

## CONCLUSION

For these reasons, the Court **AFFIRMS** the decision of the

Commissioner and **DISMISSES** this matter pursuant to sentence four of 42 U.S.C. § 405(g).

IT IS SO ORDERED.

DATED this 12th day of February, 2019.

/s/ Anna J. Brown

_____
ANNA J. BROWN
United States Senior District Judge